UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEATHER LYNNE BRANNEN,<br><br>               Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>               Defendant. | CASE NO. C16-0114-RSM-MAT<br><br>REPORT AND RECOMMENDATION<br>RE: SOCIAL SECURITY DISABILITY<br>APPEAL |

Plaintiff Heather Lynne Brannen proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[1] She has past relevant work as a childcare attendant. (AR 334.) Plaintiff applied for DIB and SSI on October 15, 2012, alleging disability beginning June 1, 2010. (AR 20.) Her applications were denied initially and on reconsideration.

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 1

On July 14, 2014, ALJ Wayne Araki held a hearing, taking testimony from plaintiff and a vocational expert. (AR 45-119.) On August 28, 2014, the ALJ issued a decision finding plaintiff not disabled. (AR 20-39.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 5, 2016 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff then appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision under 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2010. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following severe impairments: degenerative disc disease, fibromyalgia/connective tissue disease, obesity, affective disorder/bipolar disorder, anxiety disorder, and personality disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess a claimant's residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC to perform less than a full range of light work, with the following limitations: occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand or walk for two hour

intervals and sit for two hour intervals, with brief stretch breaks (of five to ten seconds), in an eight-hour day; occasionally do over the shoulder reaching; cannot climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally kneel and crawl; frequently balance, stoop, and crouch; can perform tasks that do not require more than occasional exposure to extreme cold or atmospheric conditions and do not require exposure to hazards; can have infrequent superficial interaction with general public, and occasional interaction with coworkers or supervisors; able to remember, understand, and carry out instructions and tasks generally required by occupations with an SVP of 1-3; and can make adjustments to routine changes in the workplace generally associated with occupations with an SVP of 1-3. Based on that assessment, the ALJ found plaintiff unable to perform any past relevant work.

In step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found plaintiff capable of performing other jobs, such as hotel-motel housekeeper, production line solderer, semiconductor dye loader, and diet clerk. The ALJ concluded plaintiff was not disabled from June 1, 2010 through the date of the decision.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

2002).

Plaintiff identifies a step five error in this case. She requests remand for a new hearing, including VE testimony at step five and the opportunity to present new evidence of any additional impairments and/or limitations in light of the nearly two years that have elapsed since the ALJ's decision. The Commissioner argues waiver of the alleged error and a lack of merit.

### Step Five

The ALJ proffered a hypothetical to the VE indicating plaintiff is able to do "occasional" over the shoulder reaching, a limitation consistent with the RFC adopted by the ALJ. (AR 108-09 and AR 24.) As observed by plaintiff, three of the four jobs identified by the VE and relied on by the ALJ at step five are defined in a companion publication to the Dictionary of Occupational Titles (DOT) as requiring "frequent" reaching. *See* U.S. Dep't of Labor, Selected Characteristics of Occupations (SCO) Defined in the Revised DOT, Appx. C (1993), found at 1991 WL 672783 (DOT 323.687-014, Hotel-Motel Housekeeper), 1991 WL 681592 (DOT 813.684-022, Production Line Solderer), and 1991 WL 672276 (DOT 245.587-010, Diet Clerk). The fourth job is defined as requiring "constant" reaching. *Id*. at 1991 WL 679637 (726.687-030, Semiconductor Dye Loader). Plaintiff avers a discrepancy between the VE's testimony and the DOT, and reversible error given the ALJ's reliance on the VE's testimony without any explanation or alternative basis to explain the discrepancy.

The ALJ bears the burden at step five to provide evidence demonstrating "other work exists in significant numbers in the national economy that [a claimant] can do, given [his RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). In so doing, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*,

60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Id*.

While Social Security regulations recognize VE's and several published sources other than the DOT as authoritative, the DOT raises a rebuttable presumption as to job classification. *Johnson*, 60 F.3d at 1435-36. Pursuant to Social Security Ruling (SSR) 00-4p:

> When there is an apparent unresolved conflict between VE or VS [(vocational specialist)] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The ALJ, as such, has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal

citations omitted).

The ALJ in this case did not explicitly ask the VE whether her testimony was consistent with the DOT. The ALJ did, however, ask at the conclusion of the VE's testimony: "[T]o the extent that you were given restrictions and you opined that this hypothetical person could perform work and you identified specific occupations is it your opinion that they could do these occupations as generally described by the DOT?" (AR 118.) The VE agreed this was her opinion, and also explained that she based her opinions on the DOT and its companion volumes, Washington State employment security statistics, U.S. Department of Labor Bureau Statistics, and her professional experience. (*Id*.) The ALJ thereafter, in the decision, found the VE's testimony consistent with the information in the DOT. (AR 38.) The Court finds the ALJ to have sufficiently met his obligation to inquire into consistency of the VE's testimony with the DOT. *Cf. Nicholson v. Astrue*, No. 08-4016, 2009 U.S. App. LEXIS 18761 at *14 (7th Cir. Aug. 18, 2009) ("The ALJ [performed the affirmative duty] by asking the VE specifically to point out any inconsistencies between the VE's testimony and the DOT. The VE did not mention any such inconsistencies, and Nicholson's counsel never identified any. The ALJ did all that [SSR] 00-4p required.") (citations omitted).

The question remains, however, as to whether the reaching limitation at issue in this case presented an apparent conflict with the DOT requiring a reasonable explanation for the adoption of the VE's testimony. As plaintiff observes, SSR 85-15 defines "reaching" as "extending the hands and arms in any direction." SSR 85-15; *accord* SCO, Appx. C. However, neither the DOT, nor the SCO contemplates how often an individual must reach overhead or over shoulder, or how often reaching is required bilaterally and/or with a dominant or nondominant hand. The Ninth Circuit, in an unpublished decision, recently recognized this fact in finding no apparent

conflict with the DOT and no error in an ALJ's determination that a claimant could perform work as a cashier, a job defined in the SCO as requiring frequent reaching, despite the claimant's inability to reach above shoulder level with her right hand:

> First of all, there was no "apparent" conflict between the [DOT's] highly generic description of cashier work and the [VE's] testimony. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." [SSR 00-4p.] The DOT provides only that a cashier must be able to "reach[]" "frequently," but it does not specify the type or direction of the reaching. Though the Social Security Administration has elsewhere indicated that "reaching" can require up to the "exten[sion]" of both "hands and arms in any direction," [SSR 85-15], the DOT itself leaves ample room for "[a] VE . . . to provide more specific information about jobs or occupations than the DOT." [SSR 00-4P]. Here, the ALJ's hypothetical specifically included Gutierrez's limitation on overhead reaching, but indicated that Gutierrez could reach in all other directions with her right arm, as well as no restrictions on Gutierrez's ability to reach with her left arm. We conclude that a VE is entitled to rely on his professional knowledge and common sense in determining that a hypothetical individual can perform work in a given field notwithstanding a minor limitation on one type of "reaching." Because the DOT fails to specify that the ability to reach overhead with both hands is required to perform cashier work, there was no apparent conflict between the VE's conclusion that Gutierrez could perform cashier work and the DOT's generic job description.

*Gutierrez v. Colvin*, No. 14-35231, 2016 U.S. App. LEXIS 13824 at *2-3 (9th Cir. July 29, 2016).

Here, as in *Gutierrez*, it is not necessarily clear the generic job descriptions in the DOT presented an apparent conflict requiring an explanation from the ALJ.  Indeed, it appears plaintiff's counsel at hearing did not perceive any conflict apparent enough to necessitate clarification.  That is, despite asking the VE other questions, counsel for plaintiff did not make any inquiry as to reaching limitations.  (AR 116-19.)  This omission provides support for the

REPORT AND RECOMMENDATION
PAGE - 7

absence of an obvious incompatibility between the DOT and the VE's testimony. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").[2] Likewise, while he did specifically address and reject the existence of a potential conflict based on a sit or stand option, it does not appear the ALJ perceived any apparent conflict based on the limitation in reaching. (*See* AR 38-39, 111-16.) Moreover, the VE was permitted to utilize her expertise to identify jobs in which a claimant with different types of reaching limitations could perform, and the ALJ was permitted to rely upon that expertise. *See generally Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) ("The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.").

---

[2] The Commissioner argues plaintiff waived this argument by failing to raise it at hearing. "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal[,]" and failure to comply with this rule is excused only "when necessary to avoid a manifest injustice[.]" *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Plaintiff notes she did raise the issue of a reaching limitation conflict at the Appeals Council (AR 14), and denies she was required to raise the issue before the ALJ in order to preserve it for appeal. She points, *inter alia*, to the non-adversarial nature of Social Security disability proceedings and to the Supreme Court's ruling, after *Meanel*, that a claimant does not waive judicial review by failing to present an issue to the Appeals Council. *Sims v. Apfel*, 530 U.S. 103, 107, 112 (2000). However, the Supreme Court in *Sims* specifically deferred ruling on the issue of exhaustion before the ALJ, *see id.* ("Whether a claimant must exhaust issues before the ALJ is not before us."), and the Ninth Circuit has continued to apply *Meanel*, *see*, *e.g.*, *Phillips v. Colvin*, No. 13-36071, 2015 U.S. App. LEXIS 2308 at *2 (9th Cir. Feb. 13, 2015). *See also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) ("The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process. This case is a perfect illustration. If the ALJ had heard the objection now made and agreed with it, he could easily have considered and expressly found that there were other jobs in the economy available to Mills. Here, the ALJ stopped at step four of the five-step process when he found that Mills could return to her old jobs; but if the prior jobs had been removed from the picture he would have proceeded to step five to consider whether there were other jobs in the economy available to her.") In any event, the undersigned, as in prior cases, finds the failure to raise the argument at hearing only relevant to the analysis of this type of error, not dispositive.

The Court, however, also finds this case distinguishable from both *Gutierrez* and other district court cases finding no apparent conflict between a reaching limitation and jobs as defined in the DOT.[3]  First, in *Gutierrez*, the Ninth Circuit found that, "even assuming there was an apparent conflict," the VE "made clear" he had considered the claimant's right-arm limitations and reduced the number of cashier positions available to take the limitations into account, thereby providing a reasonable explanation.  *Gutierrez*, 2016 U.S. App. LEXIS 13824 at *3.  The record in this case does not provide evidence of any such consideration on the part of the VE or the ALJ.  Second, the claimant in *Gutierrez* was less limited than plaintiff, presenting potential conflict with the DOT only if the job at issue required bilateral over the shoulder reaching.  *Id*.  *See also Carey*, 230 F.3d at 146 (VE's testimony the claimant could work as cashier or ticket seller notwithstanding amputation of his non-dominant left hand was not inconsistent with the DOT's requirement of occasional or frequent handling and fingering for those jobs because the DOT does not require bilateral manual dexterity); *Mendoza v. Colvin*, No. 14-cv-00825, 2015 U.S. Dist. LEXIS 99034 at *6-10 (D. Nev. Jul. 29, 2015) (noting the majority of district courts in the Ninth Circuit to consider the issue have found a DOT job description requiring reaching does not conflict with a claimant's inability to fully reach with one arm or hand unless the description requires bilateral reaching; concluding any conflict between a limitation to occasional overhead reaching with one arm and a DOT definition requiring frequent reaching was not "sufficiently apparent to trigger" the SSR 00-4p requirement); *Palomares v. Astrue*, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012) (where the VE testified his answers were consistent with the DOT and specifically considered the evidence indicating the claimant had reaching and lifting limitations on his left side only, there was no conflict between the VE's testimony that a person so limited

---

[3] As reflected in the parties' briefing, district courts in this circuit have reached contrary conclusions on this issue.  (*See* Dkt. 14 at 3-4 and n.3 and Dkt. 15 at 6-7).)

could perform a DOT job that required "constant reaching" because "the DOT does not require constant reaching with both arms"). In this case, plaintiff's bilateral limitation poses a potential conflict with a job requiring over the shoulder reaching of any kind.

Considering all of the above, the Court finds the specific circumstances at issue in this case – including the absence of any discussion specific to the reaching limitation, taken together with the bilateral nature of that limitation – to necessitate a remand for further administrative proceedings. Further proceedings should include consideration of whether jobs identified at step five allow for plaintiff's limitation to only occasionally reaching above shoulder level.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 28, 2016**.

DATED this 13th day of October, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 10